UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DANIEL SCHOLER,<br><br>              Plaintiff,<br><br>       v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, [1]<br><br>              Defendant. | CASE NO. 12-cv-05567 JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT FOLLOWING ORAL ARGUMENT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos. 19, 20, 21).

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

When an ALJ receives an order to "give further consideration to the treating source opinions . . . and explain the weight given to such opinion evidence," it is reversible error not to follow that order.  Here, despite being instructed by this Court and by the Appeals Council to make such findings, the ALJ failed to provide specific and legitimate reasons to discount the opinion of an examining psychologist; therefore, this matter must be reversed for further findings.

## BACKGROUND

Plaintiff, DANIEL SCHOLER, was born in 1961 and was 41 years old on the alleged date of disability onset of December 1, 2000 (*see* Tr. 690). Plaintiff attended high school to tenth grade and received his GED while in the Air Force (Tr. 718-19, 1201). Plaintiff was a boiler mechanic and worked on heating systems in the military (Tr. 716). He obtained an associate's degree in Applied Sciences Computer Field Technology from Tacoma Community College (Tr. 709) and worked in that field (copiers and fax machines) until December of 2000 when he was injured on the job (*id.*).  Following this injury on the job, plaintiff had back surgery.

Plaintiff has at least the severe impairments of degenerative disk disease in the lumbar and cervical spine, status post lumbar spine surgery, mild degenerative joint disease of the right knee, and depression (20 CFR 404.1520(c) and 416.920(c)) (Tr. 16, 756).

At the time of the hearings, plaintiff was living in the basement of his parents' home (Tr. 1201).

PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act (*see* Tr. 690). His applications were denied initially and following reconsideration (Tr. 51). Plaintiff's requested hearing was held before Administrative Law Judge Verrell Dethloff ("the ALJ") on August 2, 2007 (Tr. 704-31). On November 16, 2007, the ALJ issued a written decision in which he concluded that plaintiff was not disabled pursuant to the Social Security Act (Tr. 11-23).

On March 26, 2008, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 7-10). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision (*see* 08-cv-05299 RJB-KLS). A stipulated Order for Remand was entered on October 15, 2008, remanding the matter back to the Social Security Administration (Tr. 777-781).

On January 8, 2009, the Appeals Council issued an order to vacate the previous decision and remanded for further proceedings consistent with the order of the District Court (Tr. 782-786). The ALJ was directed to give further consideration to treating source opinions, specifically Mary C. Mangione-Lambie, Ph.D., and William J. Morris, M.D., and to explain the weight given to them; to give further consideration to plaintiff's maximum residual functional capacity; to re-evaluate plaintiff's ability to return to his past relevant work; and if warranted, obtain supplemental evidence from a vocational expert (Tr. 785).

ALJ Verrell Dethloff held hearings on June 23, 2009 (Tr. 1194-233), April 6, 2010 (Tr. 1234-62) and June 4, 2010 (Tr. 1263-85).  The ALJ issued his decision finding plaintiff not disabled on August 10, 2010.  The Appeals Council found no reason to assume jurisdiction, making the ALJ's 2009 decision the Commissioner's final decision subject to this Court's review (Tr. 732-35).

Plaintiff filed a complaint in this Court in July, 2012 (*see* ECF No. 1). Defendant filed the sealed administrative record regarding this matter ("Tr.") on November 16, 2012 (*see* ECF Nos. 15, 17).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) whether or not the ALJ followed the Order of this Court on remand to re-evaluate the medical evidence, including the opinion evidence of Mary C. Mangione, Ph.D. and William Morris, M.D.; (2) whether or not the ALJ properly assessed plaintiff's credibility; and (3) whether or not the ALJ properly assessed the law witness evidence.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion

when considering the record as a whole. *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012); *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009).

<u>DISCUSSION</u>

**1. Whether or not the ALJ followed the Order of this Court on remand to re-evaluate the medical evidence, including the opinion evidence of Mary C. Mangione, Ph.D. and William Morris, M.D.**

If a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

   a.  <u>Mary C. Mangione-Lambie, Ph.D.</u>

Dr. Mangione-Lambie provided a psychological/psychiatric evaluation for Washington State Department of Social and Health Services. As opposed to other "fill in the blank" evaluations, Dr. Mangione-Lambie provided a significant amount of handwritten notes with her detailed evaluation. She conducted a mental status examination, trail test, and used other diagnostic techniques. For example, rather than simply concluding that plaintiff's depression "interfered with his ability to perform routine tasks," she also explained that he gets bored easily, is fatigued, and has low energy and interest (Tr. 222). In support of her conclusion that plaintiff had marked

limitations in his ability to relate appropriately with co-workers and supervisors, she indicated that plaintiff was withdrawn from social interaction, had no friends, was irritable with others, and gets frustrated with others easily, which in her opinion impacted his ability to relate to others (*id.*). Similarly, Dr. Mangione-Lambie stated that her conclusion regarding plaintiff's inability to "tolerate and maintain a regular work schedule" was based on plaintiff's reported need for "frequent breaks/fatigue, a loss of interest/pleasure, lack of sleep and loss of appetite" (*id.*). A review of her report not only sets forth her conclusions but also a rather detailed basis for her conclusions.

The ALJ did not address her opinion in his original ruling of November 16, 2007 (Tr. 14-23). On the stipulated order of remand, this Court ordered the ALJ to "re-evaluate the medical evidence, including the opinion evidence of Mary C. Mangione, Ph.D. . . ." (Tr. 777). When the Appeals Council remanded the matter to the ALJ, it ordered that the ALJ was to "give further consideration to the treating source opinions, specifically of Mary C. Mangione, Ph.D. . . . pursuant to the provisions of 20 CFR 404.1527 and 416.927 and SSR 96-2P; and 96-5P, and explain the weight given to such opinion evidence" (Tr. 785).

When the ALJ issued his second decision, he mentioned Dr. Mangione's opinion once:

> Dr. Lewy rejected the opinions by evaluators, including the one by Mary C. Mongione-Lambie, Ph.D. made in a psychological evaluations (sic) of the claimant for the Department of Social and Health Services (DSHS) that the claimant had marked limitations in his social and cognitive abilities (see Exhibit 2F, p. 3; *also see* Ex. 35F, 43F, 45F, 46F, 48F, and 64F).

(Tr. 770.)

Most all of the records cited by the ALJ were not Dr. Mangione-Lambie's records. The ALJ did not provide any specific analysis of Dr. Mangione-Lambie's conclusions, but rather relied on Dr. Lewy's explanation regarding why he rejected those opinions.

Dr. Lewy explained that he rejected those opinions made for DSHS because they were not consistent with the record as a whole.  Dr. Lewy stated that his approach to this matter was to give considerable weight to treating source records as well as evaluations where there was in depth evaluations with the opportunity of more in depth diagnostic procedure that these DSHS evaluations lacked, which rendered the opinions too general(Tr. 770).

Dr. Lewy did not explain which evaluations were more in depth than Dr. Mangione-Lambie, nor which "treating source records" he was relying on in concluding that Dr. Mangione-Lambie's conclusions should be rejected.  Nor did he provide specific reasons for rejecting a particular finding. This is insufficient.

First, the matter was reversed once and the ALJ specifically was instructed by this Court and by the Appeals Council to address Dr. Mangione-Lambie's conclusions.  The Rule of Mandate requires that the order be followed.  *See, e.g., Sprague v. Ticonic National Bank,* 307 U.S. 161, 168 (1939) (citation and footnote omitted); *United States v. Bell*, 5 F.3d 64, 66-67 (4th Cir. 1993) (citations omitted). "Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *See Sullivan v. Hudson*, 490 U.S. 877, 886 (1989) (citations omitted) (*limited on other grounds*, *Shalala v. Schaefer*, 509 U.S. 292, 300

(1993)). A passing reference to Dr. Mangione-Lambie's opinion, in conjunction with a discussion of other DSHS evaluators by another reviewing physician does not provide an explanation by this ALJ for rejecting her conclusions, nor does it "explain the weight given to such opinion evidence" (Tr. 785). Furthermore, it is the ALJ's responsibility, not the responsibility of a reviewing consultant, to accept, reject and resolve conflicts in the medical opinions. While the ALJ can rely on a reviewing consultant to provide evidence, it is the ALJ's obligation to provide specific and legitimate reasons for discounting an examining psychologist's opinion.

Furthermore, if the ALJ had simply stated that Dr. Mangione-Lambie's opinion was "inconsistent with the record as a whole" that would not be a specific and legitimate reason for rejecting the opinion. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim"). So, if a consulting expert provides the same opinion, this does not make the conclusion any more specific or legitimate.

Finally, the explanation given by Dr. Lewy only sets forth the general standards that he used, and does not discuss why he is disregarding a particular opinion by Dr. Mangione-Lambie. As noted above, contrary to Dr. Lewy's general objection that DSHS evaluations are not "in depth," Dr. Mangione-Lambie's conclusions were very specific and detailed and it is unclear what "more detailed diagnostic procedure" was followed by

anyone *else* that Dr. Lewy considered more persuasive.  He does not specify what "treating source records" contradicted Dr. Mangione-Lambie's conclusions.

The Court has conducted its own review of the treating records in an attempt to determine what Dr. Lewy was referring to – but to no avail.  For instance, treating clinical psychologist, Dr. Weir, examined plaintiff for the VA in August of 2003 for memory deficits.  And although plaintiff performed within normal limits on all tests, Dr. Weir also concluded that plaintiff suffered from depression and recommended further treatment (Tr. 765).  He did not do a functional analysis, or evaluate plaintiff's ability to perform work functions. Instead, he referred plaintiff for treatment.

That treatment was provided by Mountainside Mental Health from April of 2005 through 2009 (*see, e.g.,* Tr. 386-95, 928-62, 1049-65), but these records are not very illuminating regarding plaintiff's functioning ability, and seem more geared toward the renewal of anti-depression medications.  These treatment records do not appear to provide any more detailed information than the evaluation performed by Dr. Mangione-Lambie. In fact, they provide very little information regarding plaintiff's functional abilities.

Defendant's counsel stated during oral argument that plaintiff's treatment leveled off in 2008 and that the conclusions of Dr. Brazinski-Stein further support the ALJ's rejection of Dr. Mangione-Lambie's opinions.  These were not conclusions that were reached by the ALJ, nor did they form the basis for the ALJ's decision.  After the fact explanations cannot be used to support the ALJ's decision. *See Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196

ORDER ON PLAINTIFF'S COMPLAINT
FOLLOWING ORAL ARGUMENT - 9

(1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April 2, 2012); *Stout v. Commissioner of Soc. Sec.,* 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted).

This Court concludes that the ALJ did not follow the directive of either this Court or the Appeals Council in providing further explanation regarding his rejection of Dr. Mangione-Lambie's conclusions; the ALJ's conclusions are not supported by substantial evidence in the record. Because Dr. Mangione-Lambie's conclusions were not given weight when the ALJ reached his RFC, this error likely affected the ultimate disability determination and is not harmless.

(b.)   William J. Morris, M.D.

Dr. Morris is a treating neurologist who performed back surgery on plaintiff. Initially, Dr. Morris provided inconsistent opinions. On June 13, 2001 and July 16, 2001, he opined that plaintiff was capable of light or sedentary work (Tr. 355-56). He also opined on July 16, 2001 that plaintiff was capable of walking for one to two hours at a time and up to four hours in an eight-hour day (Tr. 524). In December of 2001, Dr. Morris amended his opinion and indicated that plaintiff could walk no more than one hour at a time for up to four hours in a day (Tr. 352).

At the first hearing, the ALJ gave little weight to this opinion (Tr. 21). On remand, by stipulation, he was ordered to re-evaluate it (Tr. 777-78). The Appeals Council Order said that "the ALJ may request treating sources to provide additional

evidence and/or further clarification of the opinions and medical source statement about what the claimant can still do despite the impairments" (Tr. 785).

Regarding this doctor's opinion, the ALJ was much more pro-active. He sent a letter to Dr. Morris on February 24, 2009 (Tr. 793). This letter was returned "unable to forward" (Tr. 795). A second letter was sent on March 16, 2009 at a current address, which was confirmed by telephone (Tr. 796). As of April 10, 2009, the ALJ had received no response (Tr. 796). Although the ALJ "had an independent 'duty to fully and fairly develop the record'" *Tonapetyan v. v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting Smolen v. Chatter*, 80 F.3d 1273, 1288 (9th Cir. 1996)), the ALJ fulfilled that obligation by making reasonable efforts in seeking clarification from Dr. Morris. An ALJ should not be expected to take further steps, such as subpoenaing the physician. Here, plaintiff still has the burden of proof and this duty does not evaporate simply because the ALJ is given a directive to provide additional reasoning.

Furthermore, when faced with the prospect of not having the benefit of Dr. Morris' assistance in clearing up the ambiguity, the ALJ provided specific and legitimate reasons for discounting Dr. Morris' second opinion. Unlike his analysis (or lack thereof) for Dr. Mangione-Lambie, the ALJ provided almost two pages of explanation as to why he did not accept Dr. Morris' second opinion. Among other things, he noted that Dr. Morris had offered two opinions that plaintiff was capable of light or sedentary work (Tr. 768 (*citing* Tr. 355-56)), which was consistent with the ALJ's RFC. Dr. Morris also signed a work release for plaintiff to work as an electronic assembler technician on August 23, 2001 (Tr. 458). The ALJ noted correctly that "Dr. Morris provided very little

explanation of the evidence relied on in forming his opinion" (Tr. 768). Dr. Morris' change of opinion was incorporated into one sentence of a one paragraph letter (Tr. 537). It was conclusory.

The ALJ also indicated that plaintiff's "course of treatment is not consistent with what one would expect if the claimant were truly as limited as Dr. Morris has reported" (Tr. 768). For instance, as noted by the ALJ, plaintiff's knee pain was manageable and only warranted a 10% disability rating by the VA, and his work history indicated that he was able to continue to perform basic work activities for a number of years subsequent to his knee injuries (Tr. 104, 163). Regarding his hand and arm limitation, the ALJ referenced the opinion of Dr. Lorber who concluded that plaintiff had no limitation (Tr. 767). The ALJ also noted that plaintiff continued to work following both neck injuries in 1986 and 1999 (Tr. 768).

Additionally, the ALJ also cited independent medical examinations ["IMEs"] by orthopedic surgeon Richard McCollum and neurologist Lewis Almaraz (Tr. 769 (*citing* Tr. 496), wherein they opined "we believe that he can work at least a light level and be in a job that allows him to alternate between sitting, standing and walking. No constant or repetitive bending or twisting, with a lifting restriction of 30 pounds." (*Id.*) Finally, the ALJ noted that both Dr. Reddy and Dr. Iregul had cleared plaintiff for light and sedentary work (Tr. 610, 663). In summary, the ALJ provided specific and legitimate reasons for discounting Dr. Morris' opinion.

The Court notes, however, that the ALJ premised his discussion of Dr. Morris' opinion with the supposition that treating physicians are biased in favor of their patients. He stated:

> . . . the Ninth Circuit has tempered this preference [for treating physician opinions] with a number of cautionary exceptions to the rule that such opinions should be accorded particular weight, doubtless in recognition of what the Seventh Circuit has termed 'the well-known propensity of personal physicians to go the extra step in helping their patients obtain benefits for a medical condition.' **DeFrancisco v. Bowen**, 867 F.2d 1040, 1043 (7th Cir. 1989). See **Brownton v. Heckler**, 571 F. Supp. 140, 143 (N.D. Cal., 1983). S*ee, generally, Novack, et. al., "Physicians' Attitude Toward Using Deception to Resolve Ethical Problems*, Journal of the American Medical Association, May 29, 1989; **Scott v. Heckler** 770 F.2d 472, 485 (5th Cir. 1985) (ALJ may reject opinion if record supports conclusion physician "is leaning over backwards to support of application"). The cautionary rules of the Ninth Circuit reflect to some degree those issues enumerated as considerations for the assessments of treating opinions in the Commissioner's regulations.

(Tr. 766).

It would be wrong to characterize Ninth Circuit authority in these terms. In fact, Ninth Circuit authority is directly opposite of the ALJ's presumption of incredulity. According to the Ninth Circuit "[t]he Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits." *Lester v. Chatter*, 81 F.3d 821, 832 (9th Cir. 1985) (*quoting with approval Ratto v. Secretary*, 539 F. Supp. 1415, 1426 (D. Or. 1993)). The ALJ should not presume that treating physicians have a propensity to mislead as this is improper pursuant to Ninth Circuit authority. Defendant argued during oral argument that this is part of the ALJ's "boilerplate." This makes the error even more problematic. The ALJ should not use a standard from the Seventh Circuit or the Fifth Circuit in assuming that treating physicians would "lean over backward" to help their

patients obtain benefits.  Certainly, it should not be part of the boilerplate consideration utilized in every case regardless of evidence.

Nevertheless, because the ALJ cited other specific and legitimate reasons for rejecting Dr. Morris' opinion, the ALJ's error is deemed harmless in this instance.

**2.    Whether or not the ALJ properly assessed plaintiff's credibility.**

Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing Cotton, supra*, 799 F.2d at 1407).  Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen, supra*, 80 F.3d at 1283-84; *Reddick, supra*, 157 F.3d at 722 (*citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989))

The ALJ provided several reasons for discounting plaintiff's credibility. Additionally, in his second opinion, the ALJ referenced his first opinion, which provided additional reasons for questioning plaintiff's credibility (Tr. 764 (*citing* Tr. 20A-22)). Because this matter must be remanded for further findings and because the ALJ's evaluation of medical evidence may affect the ALJ's evaluation of plaintiff's credibility, this Court will not address each of the ALJ's considerations.

1   Nevertheless, because the Court has evaluated those considerations, the ALJ is
2   directed to consider the following observations. First, regarding activities of daily living,
3   the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on
4   certain daily activities . . . . does not in any way detract from [his] credibility as to
5   [his] overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (*quoting*
6   *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified
7   "the two grounds for using daily activities to form the basis of an adverse credibility
8   determination: (1) whether or not they contradict the claimant's other testimony and (2)
9   whether or not the activities of daily living meet "the threshold for transferable work
10  skills." *Orn, supra*, 495 F.3d at 639 (*citing Fair, supra*, 885 F.2d at 603). As stated by the
11  
12  Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and
13  their transferability to conclude that a claimant's daily activities warrant an adverse
14  credibility determination. *Orn, supra,* 495 F.3d at 639.
15  At times, the ALJ is relying on activities that did not contradict plaintiff's
16  testimony and did not meet the threshold for transferable work skills. For instance, the
17  ALJ noted that plaintiff "is apparently able to care for his elderly mother, a young child
18  and two pets at home, which can be quite demanding physically and emotionally" (Tr.
19  765). Plaintiff never denied, and in fact confirmed, that he watched his mother and
20  nephew and took care of his pets (Tr. 87-89, 1248, 1257-58) Therefore, these activities do
21  
22  not contradict his testimony. . Nor did the ALJ discuss any evidence that these activities
23  were readily transferable into work skills. To the contrary, the testimony from plaintiff
24  and others indicated that these activities were very limited. For instance, although he and

his father both testified that he watched his mother, as his father explained, "He is there to call if she needs help" (Tr. 96). His brother testified that although plaintiff watched his son, this activity is limited in scope. "Generally Dan would come down at seven, eight o'clock at night and spend the night and I leave at 4:30, five o'clock in the morning for work, or two depending upon overtime, and he would stay there and watch him until I got home at three o'clock. If it was a weekend, he stay[ed] both days and watched him until the end of the weekend" (Tr. 1258). That was it. No description of what plaintiff did or how much effort was required.

While an ALJ is allowed to make reasonable inferences from the evidence, the ALJ cannot speculate. *See* SSR 86-8, 1896 SSR LEXIS 15 at *22. Here it appears that the ALJ is crossing the line from a reasonable inference to speculation. Therefore, this conclusion is not supported by substantial evidence in the record.

Therefore, on remand, the ALJ is directed to evaluate the activities of daily living and determine (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn, supra*, 495 F.3d at 639 (*citing Fair, supra*, 885 F.2d at 603).

**3. Whether or not the ALJ properly assessed the lay testimony.**

Because this matter is being remanded, the ALJ also is directed to reevaluate the lay testimony.

An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane

to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*citing Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because in determining whether or not "a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

### 4. Whether or not this matter should be remanded for award of benefits.

Finally, as this Court has concluded that the ALJ committed errors that are not harmless, the question becomes whether this matter should be remanded for further consideration or for an immediate award of benefits.

Generally, when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved that cannot be resolved as a matter of law.  For instance, there is a significant difference between much of the medical information and the testimony from plaintiff, his father, and brother.  This matter cannot be resolved without evaluating that evidence anew.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971))).

Therefore, remand is appropriate in order to allow the Commissioner the opportunity to consider properly all of the lay and medical evidence as a whole and to incorporate the properly considered lay and medical evidence into the consideration of plaintiff's credibility and residual functional capacity.  *See Sample, supra*, 694 F.2d at 642.

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 23rd day of September, 2013.

*/s/ J. Richard Creatura*

J. Richard Creatura
United States Magistrate Judge